UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the Use and Benefit of Collins Plumbing, Inc., a California Corporation; COLLINS PLUMBING, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TURNER-PENICK JOINT VENTURE et al.,<br><br>Defendants.<br><br>RELATED COUNTER-CLAIMS AND CROSS-CLAIMS | Civil No. 3:11-cv-2834-GPC-MDD<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANTS' MOTION TO STRIKE PORTION OF PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF NO. 15);**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE PORTION OF CALIFORNIA COMFORT SYSTEMS USA, INC'S COUNTERCLAIMS (ECF NO. 41)** |

**INTRODUCTION**

Before the Court is Defendant Turner-Penick Joint Venture's ("Tuner-Penick") Motion to Strike plaintiff United States of America for the Use and Benefit of Collins Plumbing, Inc.'s ("Plaintiff" or "Collins") demand for a jury trial pursuant to Federal Rules of Civil Procedure 12(f) and 39. (ECF No. 15.) Plaintiff filed an opposition, (ECF No. 21), and Defendant filed a reply, (ECF No. 24). Having considered the

parties' submissions and the applicable law, the Court will **DENY** Defendant's Motion to Strike Plaintiff's jury demand.

Also before the court is Turner-Penick's Motion to Strike Counterclaimant California Comfort Systems USA Inc.'s ("CCS") demand for a jury trial. (ECF No. 41.) CCS filed an opposition, (ECF No. 65), and Defendant filed a reply, (ECF No. 68). Having considered the parties' submissions and the applicable law, the Court will **GRANT IN PART** and **DENY IN PART** Turner-Penick's Motion to Strike CCS's demand for a jury trial.

## FACTUAL BACKGROUND

Turner-Penick, as general contractor, entered into written contracts with the United States of America to construct United States Marine Corps ("USMC") Bachelor Enlisted Quarters ("BEQ") known as USMC BEQ Numbers 4 and 7, at Marine Corps Base, Camp Pendleton. (ECF No. 65.)

On or about December 4, 2009, Turner-Penick entered into a written subcontract with Collins Plumbing, Inc. ("Collins") for the performance of certain work on USMC BEQ 4 and BEQ 7 ("Subcontract #1"). (ECF No. 21.) Specifically, Subcontract #1 covered the design and installation of a plumbing system. (*Id.*) Between December 4, 2009, and August 15, 2011, Collins furnished labor, material, services, or equipment, or a combination of these, pursuant to the Subcontract #1 and at specific requests by Turner-Penick. (*Id.*) For these reasons, Collins claims it became entitled to payment. (*Id.*) Collins alleges, however, that Turner-Penick failed and refused to perform its obligations under Subcontract #1 for BEQ 4 in that Turner-Penick has paid only part of what was due under Subcontract #1, leaving a balance of $1,094,184.00 due and owing. (*Id.*)

As required by the Miller Act, 40 U.S.C. § 3131, Turner-Penick obtained a payment bond for its work at Camp Pendleton. (*Id.*) Under Payment Bond No. 9000-0045 ("Bond")–executed between Turner-Penick and defendants Safeco Insurance Company of America, Liberty Mutual Insurance Company, Zurich American Insurance

Company, Fidelity & Deposit Company of Maryland, and Federal Insurance Company ("Surety Defendants")–the Surety Defendants are jointly and severally obligated to provide payment to Collins for work performed on the project. (*Id.*)  Collins claims that, because Turner-Penick has failed to make payment, the Surety Defendants are obligated to pay Collins. (*Id.*)

CCS also contracted to work on BEQ 4 and 7.  On or about October 15, 2009, Turner-Penick entered into written subcontract with CCS for the design and installation of mechanical heating and air conditioning systems ("Subcontract #2"). (ECF No. 65.) Turner-Penick drafted Subcontract #2.  CCS furnished labor, material, services, and equipment pursuant to Subcontract #2.  In its Counterclaims against Turner-Penick, CCS alleges Turner-Penick failed and refused to perform its obligations under Subcontract #2 in that Turner-Penick has paid only part of the amount owed under Subcontract #2, leaving a large balance due and owing to CCS. (*Id.*)

## PROCEDURAL BACKGROUND

On December 5, 2011, Plaintiff filed its original complaint. (ECF No. 1.)  On February 21, 2012, Plaintiff filed its currently operative Second Amended Complaint ("SAC"). (ECF No. 14.)  In its SAC, Plaintiff demands a jury trial. On March 8, 2012, Turner-Penick filed the instant Motion to Strike Plaintiff's jury demand pursuant to Federal Rules of Civil Procedure 12(f) and 39.

On May 22, 2012, Turner-Penick filed an answer to Plaintiff's SAC and counterclaims against Plaintiff, CCS, and another subcontractor, Walsh Engineering. (ECF No. 26.)  On July 19, 2012, CCS filed an answer to Turner-Penick's Counterclaims and also filed its own Counterclaims against Turner-Penick. In its Counterclaims against Turner-Penick, CCS demands a jury trial. On August 16, 2012, Turner Penick filed the instant Motion to Strike CCS's jury demand pursuant to Rules 12(f) and 39.

/ / /

/ / /

# DISCUSSION

## I. Legal Standards

### A. Motion to Strike

A motion to strike is brought under Federal Rule of Civil Procedure 12(f). Rule 12(f) provides that a "court may strike from a pleadings an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion to strike is to avoid unnecessary expenditures that arise throughout litigation by dispensing of any spurious issues prior to trial. *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Rule 12(f) motions "are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). Thus, courts generally grant a motion to strike only where "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Walters v. Fidelity Mortg. of Cal.*, 730 F. Supp. 2d 1185, 1196 (E.D. Cal. 2010) (citing *Lilley v. Charren*, 936 F. Supp. 708, 713 (N.D. Cal. 1996)).

"A motion to strike is . . . not normally granted unless prejudice would result to the movant from the denial of the motion." *United States v. 729,773 Acres of Land*, 531 F. Supp. 967, 971 (D. Haw. 1982). The Ninth Circuit has found a motion to strike appropriately granted where the allegations at issue "created serious risks of prejudice . . ., delay, and confusion of the issues." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

The decision to grant or deny a motion to strike is within a court's sound discretion. *See Beaulieu v. IRS*, 481 Fed. Appx. 360 (9th Cir. 2012). In exercising its discretion, the court views the pleadings in the light most favorable to the non-moving party and resolves any doubt as to the relevance of the challenged allegations in favor of the non-moving party. *See In re 2TheMart.com Secs. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

**B.     Jury Waiver**

"Under Federal Rules of Civil Procedure 39(a), a [c]ourt may strike a jury demand where the parties have executed a waiver of their right to a jury trial." *GEM Acquisitionco, LLC v. Sorenson Group Holdings, LLC*, 2009 WL 3246747, at *4 (N.D. Cal. Oct. 8, 2009) (citing *Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 436-38 (S.D.N.Y. 2004); *Okura & Co., Inc. v. Careau Group*, 783 F. Supp. 482 (C.D. Cal. 1991)). A jury waiver provision will be enforced if it was entered into "knowingly and voluntarily." *Phoenix Leasing, Inc. v. Sure Broad., Inc.*, 843 F. Supp. 1379, 1384 (D. Nev. 1994) (citing *Okura*, 783 F. Supp. at 488); *Standard Wire & Cable Co. v. AmeriTrust Corp.*, 697 F. Supp. 368, 375 (C.D. Cal. 1988).

Courts have considered several factors to determine whether a jury waiver was knowing and voluntary, including: (1) whether there was a gross disparity in bargaining power between the parties; (2) the business or profession experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate the contract terms; and (4) whether the clause containing the waiver was inconspicuous. *Phoenix Leasing*, 843 F. Supp. at 1384 (citing *Hydramar, Inc. v. Gen. Dynamics Corp.*, 1989 WL 159267 (E.D. Pa. Dec. 29, 1989); *Breham v. Asset Acceptance, LLC*, 2010 WL 1735147, at *1-2 (D. Ariz. Apr. 28, 2010).

**II.     Analysis**

**A.     Plaintiff's Jury Demand**

Turner-Penick asserts Plaintiff's jury demand is both immaterial and impertinent because Plaintiff previously waived its right to a jury trial in Subcontract #1. (ECF No. 15.) Turner-Penick therefore requests that the court strike Plaintiff's demand for a jury trial as permitted under Rule 39 and in accordance with Rule 12(f). In opposition, Plaintiff argues the express language of the provision in Subcontract #1 does not result in a waiver of Plaintiff's right to a jury trial. (ECF No. 21.)

The jury waiver language is found in a "Dispute Resolution" provision, which reads:

> "The parties recognize that problems and disputes between them may occur and that it is preferable for them to reach an amicable resolution of same without the need to resort to formal dispute resolution procedures. In that regard, they each pledge to participate in good faith in voluntary and non-binding Alternate Dispute Resolution (ADR) procedures. However, in the event that such disputes are not resolved by mediation or another ADR procedure as Turner-Penick and the Subcontractor may agree then such disputes shall be resolved at Turner-Penick's sole option either in the manner and forum pursuant to which disputes between the Owner and Turner-Penick are to be resolved under the terms of the General Contract, or according to law. Furthermore, the Subcontractor agrees that Turner-Penick shall have the exclusive right to join the Subcontractor as a party in any dispute resolution procedure (including without limitation ADR procedures, binding arbitration or other judicial or non-judicial proceeding) between Owner and Turner-Penick, together with such other subcontractors or parties as may be appropriate, where in the judgement of Turner-Penick the issues in dispute are related to the work or performance of the Subcontractor. *Furthermore, the Subcontractor expressly agrees to waive its right to trial by jury in case Turner-Penick elects to resolve the dispute in litigation.*"

(Emphasis added.)

Plaintiff asserts the express language of the waiver is limited to the case where Turner-Penick is a plaintiff and therefore the party who *elects* to resolve the dispute in litigation. (ECF No. 21.) Turner-Penick disagrees. (ECF No. 24.) Turner-Penick asserts that its Answer to Plaintiff's SAC, along with its Counterclaims against Plaintiff, constitute its election to resolve this dispute via litigation. Turner-Penick argues that, instead of participating in this litigation, it could have demanded arbitration or compelled Plaintiff to participate in some other form of dispute resolution.

It is not clear, however, that Turner-Penick could have sought an order compelling Plaintiff to arbitrate its claims after Plaintiff first filed suit. The dispute resolution provision provides that, "in the event that . . . disputes are not resolved by mediation or another ADR procedure . . . then such disputes shall be resolved at Turner-Penick's sole option either in the manner and forum pursuant to which disputes between the Owner and Turner-Penick are to be resolved under the terms of the General Contract, or according to law." The court has no information regarding the way "disputes between the Owner and Turner-Penick are to be resolved under the terms of the General Contract." And Turner-Penick could choose any number of options

"according to law."

Moreover, Turner-Penick asserts the provision regarding its election to resolve the dispute in litigation is "irrelevant." The problem with this approach is that, when interpreting a contract, a court must strive to give effect to each of the contract's provisions without creating a surplusage of terms. *See Stagner v. Luxottica Retail N. Am., Inc.*, 2011 WL 3667502, at *4 (N.D. Cal. Aug. 22, 2011).

The Court finds both parties' interpretations of the contract to be reasonable. Because each interpretation would result in a different outcome, the Court concludes the waiver provision is ambiguous with regard to whether Turner-Penick may enforce the waiver where the "Subcontractor" files suit first. Because "[j]ury waivers are to be narrowly construed and any ambiguity is to be decided against the waiver," *Phoenix Leasing,* 843 F. Supp. at 1388, the Court interprets this ambiguity in Plaintiff's favor. Accordingly, the Court must deny Turner-Penick's Motion to Strike Plaintiff's demand for a jury trial.

Turner-Penick and Plaintiff alternately dispute whether Collins knowingly and voluntarily waived its right to a jury. The Court need not consider this question, however, because the Court has found Turner-Penick cannot invoke the waiver against Plaintiff. Given the ambiguous language of the provision, the general disfavor of motions to strike, and viewing the pleadings in light most favorable to the non-moving party, Turner-Penick's Motion to Strike Plaintiff's demand for a jury trial is **DENIED**.

**B.   CCS's Jury Demand**

In its Counterclaims against Turner-Penick, CCS also demands a trial by jury. Turner-Penick argues CCS waived this right through Subcontract #2, which contains the same dispute resolution provision found in Subcontract #1. (ECF No. 35-1.) Unlike the dispute between Plaintiff and Turner-Penick, the dispute between Turner-Penick and CCS arose when Turner-Penick filed its Counterclaims against CCS. That is, Turner-Penick clearly elected to resolve its dispute with CCS through litigation. Thus, at the outset, the Court observes there is no ambiguity problem with the contract

provision as it applies to CCS.

CCS argues that, even if Turner-Penick elected to resolve the parties' dispute in litigation, CCS did not waive its right to a jury trial "knowingly and voluntarily." In its Motion to Strike, Turner-Penick asserts that both parties are sophisticated business entities, there is clear evidence the parties negotiated the contract terms, and that the jury waiver provision is not inconspicuous. (ECF No. 41-1.) In opposition, CCS argues the waiver should not be enforced because there is a gross disparity of bargaining power between the parties, CCS does not have the type of business experience necessary to comprehend the ramifications of such a provision, and that the waiver is inconspicuous. (ECF No. 65.)

### 1.     Gross Disparity in Bargaining Power Between the Parties

Turner-Penick asserts CCS has annual revenues of more than $45 million, has near 300 employees, and routinely works on large-scale projects, including Qualcomm manufacturing buildings, the Neurocrine BioSciences Campus, and buildings for Johnson & Johnson, Genohme, and Pfizer. (ECF No. 68.) Turner-Penick claims CCS's other projects include large medical buildings fpr Sharp Hospital, Scripps, and the UCSD Medical Center. (ECF No. 41-1.)

CCS does not dispute its annual income, client list, or completion of the aforementioned projects as stated by Tuner-Penick. CCS does argue however, that Turner-Penick is a much larger entity. CCS states that, as a joint venture general contracting firm, Turner-Penick employs thousands of individuals. (ECF No. 65.)

The first factor in determining whether CCS "knowingly and voluntarily" waived its right to a jury trial is whether a "gross disparity in bargaining power [existed] between the contracting parties." *Phoenix Leasing,* 843 F. Supp. at 1384. It is not required that the parties stand on precisely equal footing. *See id.* at 1385 (noting that while the facts in that case demonstrated that there "was some inequality of bargaining power," it was not "of the kind or degree necessary to invalidate the waiver provision"); *see also Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 56 F.

Supp. 2d 694, 709 (E.D. La 1999) ("To invalidate a waiver provision, . . . the bargaining differential must be the kind of 'extreme bargaining disadvantage' or 'gross disparity in bargaining position' that occurs only in certain exceptional situations.").

Though Turner-Penick may be a larger entity than CCS, which may result in some inequality of bargaining power, it does not appear that the inequality is of the "degree necessary to invalidate the waiver provision." *Id.* The large scale projects historically completed by CCS, along with its annual revenue and number of employees, demonstrate CCS had sufficient bargaining power to understand and negotiate Subcontract #2 and its terms. As such, the Court finds the bargaining power between Turner-Penick and CCS is not grossly disparate. This factor therefore weighs in favor of finding that CCS knowingly and voluntarily waived its right to a jury trial.

### 2. The Business and Professional Experience of the Party Opposing the Waiver

Turner-Penick argues CCS is a sophisticated commercial entity with adequate business and professional experience sufficient to understand the waiver provision. (ECF No. 41-1.) Turner-Penick asserts CCS "is a publicly traded company that is listed on the New York Stock Exchange [and] ha[s] revenues of over $45 million and 300 employees." (ECF No. 68.) CCS does not dispute these assertions, but instead states it does "not have the type of experience necessary to know and comprehend the ramifications of such a provision." (ECF No. 65.)

CCS's previous work on complex and large-scale projects, its experience in the market, and its multi-million dollar annual revenues support the conclusion that CCS had sufficient business and professional experience to understand the jury waiver provision. This factor therefore weighs in favor of finding that CCS knowingly and voluntarily waived its right to a jury.

### 3. Whether the Opposing Party had the Opportunity to Negotiate the Contract Terms

Turner-Penick provides citations to certain crossed-out provisions in Subcontract

#2, which Turner-Penick contends demonstrate a mutual give and take with regard to the contract terms. (*See* ECF No. 35-1 at 12-15.) CCS does not dispute that these crossed-out provisions represent a negotiation of the contract terms; CCS does not even address this factor in its Opposition. The Court find this factor weighs in favor of finding that CCS's waiver was knowing and voluntary.

### 4. Whether the Clause Containing the Waiver was Inconspicuous

Tuner-Penick asserts the provision is in a place where the individuals who reviewed and signed the contracts could easily see it. The clause in question is contained in a relatively short paragraph entitled "Dispute Resolution," which Turner-Penick asserts covers the topic of a jury waiver. Turner-Penick notes the provision is on page fourteen of the fifteen-page contract and that page fourteen is initialed by CCS, with the following page signed by CCS.

CCS takes issue with the fact that the clause is in a paragraph entitled "Dispute Resolution" instead of "Jury Waiver." CCS argues that, because the clause is the last sentence in the paragraph in lowercase type that is undifferentiated from the surrounding text, it is buried and therefore inconspicuous.

The Court finds the waiver clause is partly inconspicuous given that it is in undifferentiated print at the end of a paragraph entitled "Dispute Resolution" instead of "Jury Waiver" or the like. Still, CCS initialed this page, signaling that CCS reviewed and agreed to the provisions on the page. Further, the page containing the waiver contains crossed-out provisions, indicating that CCS carefully read the terms on the page, including the jury waiver provision, and that CCS decided to leave the jury waiver language intact. Based on the foregoing, the Court finds that this factor weighs in favor of finding CCS knowingly and voluntarily waived its right to a jury trial.

In sum, the Court finds there is not a gross disparity in bargaining power between Turner-Penick and CCS; CCS is a sophisticated business entity with sufficient experience to understand the jury waiver clause; CCS had the opportunity to, and did

in fact, negotiate the terms of Subcontract #2; and the waiver is not inconspicuous. All four factors weigh in favor of finding that CCS "voluntarily and knowingly" waived its right to a jury trial.

### C.     Jury Waiver Provision is not Unconscionable

The right to a jury trial is governed by federal law. *See Simler v. Conner*, 372 U.S. 221, 221-22 (1963) (per curiam). Federal law governing the validity of a contractual jury waiver, however, does not preempt California's law of unconscionability. *See Phoenix Leasing,* 843 F. Supp. at 1385 (providing that California Civil Code Section 1670.5 applies to all contracts in California). CCS thus asserts, and Turner-Penick does not deny, that, because Subcontract #2 was entered into in California and the project is located in California, California Civil Code section 1670.5 applies.

California law permits a court to refuse to enforce an unconscionable clause in a contract. Cal. Civ. Code § 1670.5(a). The leading California case on unconscionability recognizes that unconscionability has two aspects—procedural and substantive. *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982). Both procedural and substantive unconscionability must be present before a contract or clause will be held unconscionable. *Carboni v. Arrospide*, 2 Cal. App. 4th 76, 83 (1991). A sliding scale, however, allows a strong showing of substantive unconscionability to compensate for a lesser showing of procedural unconscionability, and vice versa. *Id.*

#### 1.     The Jury Waiver is not Substantively Unconscionable

The substantive aspect of the unconscionability test focuses on the existence of an overly harsh allocation of risk or cost which is not justified by the circumstances under which the contract was made. *Id.* CCS argues Turner-Penick has an "absence of justification" for their jury waiver clause. (ECF No. 65.)

In this case, the allocation of risk or cost is the loss of the right to a jury trial, thus requiring the party opposing the waiver to try its case to the court. But, as the

*Phoenix Leasing* court observed,

> There is no presumption that a trial to a court is unconscionably more favorable . . . than a trial to a jury. As a matter of law, it would seem that we should be precluded from entering a finding that a trial to a court rather than a jury favors any party in any degree.

843 F. Supp. at 1387.

The circumstances under which this contract was entered into justify this allocation of risk. Bench trials often cost less than jury trials. Bench trials also provide the parties with the opportunity to try their case to a judge who is arguably better at understanding complex contractual relations between commercial entities than lay jurors. Indeed, this is a leading reason parties contract to waive their right to jury trial in the first place.

CCS further claims that the clause is not "mutual," as the express language only gives Turner-Penick the right to enforce the clause. Citing *Nagrampa v. MailCoups, Inc.*, 469 F. 3d 1257, 1285 (9th Cir. 2006), CCS argues "a lack of mutuality can support a finding of substantive unconscionability." In *Nagrampa*, however, the lack of mutuality concerned a provision that required arbitration of weaker party's claims while allowing the stronger party a choice of judicial forums for its claims. 469 F. 3d at 1285-86 (citing *Armendariz v. Found Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). A lack of mutuality that forces the weaker party to arbitrate its claims while allowing the stronger party to resolve its claims in its choice of forum appears more extreme than the instant situation. Here, CCS has not clearly waived its right to resolve disputes by litigation while Turner-Penick reserved the privilege. CCS only agreed to waive its right to a jury trial if Turner-Penick elects to resolve the dispute in litigation. The lack of mutuality here thus appears less severe than in *Nagrampa*. While lack of mutuality is taken into consideration, it is not sufficiently strong to support a finding of substantive unconscionability in this case.

The Court finds Turner-Penick has sufficient justification for including a jury waiver provision in that construction litigation is often very complicated and therefore better suited for trial to a judge instead of a jury. This justification, in conjunction with

the strong language from the *Phoenix Leasing* court regarding bench trials, supports the Court's conclusion that the jury waiver clause in the contract is not substantivally unconscionable.

### 2. The Jury Waiver is not Procedurally Unconscionable

The procedural aspect of unconscionability focuses on two factors: oppression and surprise. *A & M Produce Co.*, 135 Cal. App. 3d at 486. "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Id.* (quotation marks omitted). "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the form drafted by the party seeking to enforce the disputed terms." *Id.* (quotation marks omitted).

For CCS to demonstrate procedural unconscionability, it must show either oppression or surprise. An inequality of bargaining power that prevents real negotiation can demonstrate oppression, and a hidden or inconspicuous contract term can demonstrate surprise. The Court has already determined that the bargaining power between the parties was not unequal. (*See* § II(B)(1), *supra*.) The Court has also concluded the parties actually considered and negotiated the jury waiver provision. (*See* § II(B)(3), *supra*.) For these reasons the Court finds no oppression for purposes of procedural unconscionability. Similarly, the Court has determined the disputed provision was not hidden in the text or otherwise inconspicuous. (See § II(B)(4).) Accordingly, the Court concludes there was no surprise. Finding no substantive or procedural unconscionability, the Court concludes the jury waiver provision is not unconscionable.

### D. Surety Defendants

#### 1. Standing

CCS argues the Surety Defendants lack standing to enforce the jury waiver provision against CCS. (ECF No. 65.) CCS first notes that the Surety Defendants are not parties to Subcontract #2. (*Id.*) Turner-Penick and the Surety Defendants argue it

has long been held that the defenses of a principal are available to its sureties and therefore the Surety Defendants should be allowed to enforce the waiver provision against CCS. (ECF No. 68.)

"Because the right to a jury trial is a fundamental right guaranteed to our citizenry by the Constitution, courts should indulge every reasonable presumption against waiver." *Pradier v. Elespuru*, 641 F.2d 808, 811 (9th Cir. 1981). Thus, "[t]he justification for a surety to 'stand in the shoes' of its principal diminishes when the principal's right to be enforced is not related to the principal's liability, but to the process or procedure relating to the adjudication of that liability." *Attard Industries, Inc. v. U.S. Fire Ins. Co.,* 2010 WL 3069799, at *4 (E.D. Va. Aug. 5, 2010).

Here, the Surety Defendants seek to enforce their principal's right to invoke a a contractual jury waiver. A jury waiver, however, is not related to a principal's liability but is instead related to the process or procedure by which the principal's liability will be judged. Accordingly, as the *Attard* court concluded, the justification for the Surety Defendants to stand in the shoes of their principal is diminished. This diminished justification, in addition to the presumption against jury waiver, weighs in favor of finding that the Surety Defendants cannot enforce the jury waiver clause on behalf of their principal, Turner-Penick.

### 2.  A Jury Waiver Provision is Different than an Arbitration Clause

Turner-Penick and the Surety Defendants assert that sureties are often permitted to enforce the mandatory arbitration clauses of their principals. They argue arbitration clauses and jury waivers are similar in that they both eliminate the right to trial by jury and thus the Court should treat the jury waiver at issue here the same as an arbitration clause, thus permitting Surety Defendants to enforce the jury waiver provision against CCS. (ECF No. 68.)

As the *Attard* court concluded, however, "[t]hose cases that have enforced arbitration provisions, and their concomitant waiver of a trial and a jury, are driven by

the strong federal policy in favor of arbitration." 2010 WL 3069799 at *4. "For that reason, the strong federal policy that justifies sweeping away a right to a jury through the enforcement of an arbitration clause disappears in the absence of an arbitration clause; and the strong federal policy against jury waivers operates free of any such countervailing policy." *Id.*

The "Dispute Resolution" provision does not clearly contain an arbitration clause. Further, this Court agrees with the *Attard* court's conclusion that the waiver of the right to a jury though an arbitration clause is not the same as an express waiver to a right to trial by jury. Turner-Penick's position, that the two are similar and should receive the same treatment, is therefore unpersuasive.

In short, Turner-Penick and the Surety Defendants have not made a sufficient showing to overcome the presumption against waiver. Accordingly, the Surety Defendants may not enforce the jury waiver provision against CCS.

Based on the foregoing, Defendants' Motion to Strike CCS's jury demand is **GRANTED** with respect to Turner-Penick and **DENIED** as to the Surety Defendants. Because Turner-Penick may enforce the waiver against CCS, there is little practical effect to the conclusion that the Surety Defendants may not enforce the waiver.

## CONCLUSION & ORDER

After a careful consideration of the parties' submissions, and for the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Strike Plaintiff's jury demand, (ECF No. 15), is **DENIED**; and

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

2. Defendants' Motion to Strike California Comfort Systems USA, Inc.'s jury demand, (ECF No. 41), is **GRANTED IN PART** and **DENIED IN PART**.[1]

DATED: September 30, 2013

HON. GONZALO P. CURIEL
United States District Judge

---

[1] The Court understands the parties are currently engaged in mediation efforts. The Court, however, found it necessary to decide the instant motions given the length of time they have been pending.