UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the Use and Benefit of Collins Plumbing, Inc., a California Corporation; COLLINS PLUMBING, INC.,<br><br>　　　　　　Plaintiffs,<br>v.<br>TURNER-PENICK JOINT VENTURE et al.,<br>　　　　　　Defendants.<br><br>AND RELATED COUNTER-CLAIMS AND THIRD-PARTY CLAIMS | Civil No. 3:11-cv-2834-GPC-MDD<br><br>**ORDER GRANTING JOINT MOTIONS FOR DETERMINATION OF GOOD FAITH SETTLEMENT**<br><br>**(ECF NOS. 158, 167)** |

## INTRODUCTION

Turner-Penick Joint Venture ("Turner-Penick") and non-party MVEI-VMA Joint Venture ("MVEI") have filed a joint motion for determination of good faith settlement. (ECF No. 158.) Turner-Penick and Collins Plumbing, Inc. ("Collins") have also filed a joint motion for determination of good faith settlement. (ECF No. 167.) To date, the Court has received no opposition to these joint motions by the other parties to this case ("Nonsettling Parties"). Having considered the parties' joint motions and the

applicable law, the Court will **GRANT** both joint motions.

## BACKGROUND

In 2008, the Naval Facilities Engineering Command ("NAVFAC") solicited bids for the construction of two Bachelor Enlisted Quarters ("BEQs") for the U.S. Marine Corps at Camp Pendleton, California known as Package 4 ("BEQ 4") and Package 7 ("BEQ 7") (collectively, the "Project"). Turner-Penick was the general design-builder on the Project and therefore subcontracted directly with all members of the design-build team, including Collins, California Comfort Systems USA, Inc. ("Comfort Systems"), Walsh Engineers, Inc. ("Walsh"), and MVEI (a joint venture of two architectural firms). Turner-Penick contends it allocated responsibility for coordinating the design of the Project to MVEI, while MVEI contends Turner-Penick maintained ultimate control over, and responsibility for, the design. The Project is now complete, and all buildings are occupied.

The main issue in this case involves the design and installation of certain mechanical systems in the BEQ 4 attics. Comfort Systems initially designed an HVAC system that used exterior wall louvers for ventilation rather than a central-air system. Comfort Systems contends Turner-Penick authorized this particular design, while Turner-Penick contends Comfort Systems provided assurance that the system complied with Project requirements and would be accepted by NAVFAC. NAVFAC rejected the exterior-wall-louver system and required a central-air system to be installed in the BEQ 4 attics.

During the modification, NAVFAC inspected the attics and asserted the spacing was inadequate. The issue of attic spacing had been discussed, vetted, and ultimately approved by the design team. Turner-Penick contends the design team should have understood and followed Project requirements, while Collins and the other subcontractors contend Turner-Penick controlled and approved the original design and then unilaterally opted to pursue a complete redesign of the attic space in response to NAVFAC's inspection.

On December 5, 2011, Collins filed an action for breach of contract against Turner-Penick and for recovery under the Miller Act against defendants Safeco Insurance Company of America, Liberty Mutual Insurance Company, Zurich American Insurance Company, Fidelity and Deposit Company of Maryland, and Federal Insurance Company (collectively, "Sureties"). Collins alleges it is owed $1,446,996 for unpaid work on the Project, including $754,425 in plumbing re-work in the attics and $692,571 in contract balance and change orders, fees, costs, and interest. Collins alleges the Sureties are jointly and severally obligated to pay Collins. Collins also maintains a third-party claim against Comfort Systems.

Turnick-Penick asserts counterclaims and third-party claims against Collins, Comfort Systems, MVEI, and Walsh for breach of express and implied contract, negligence, express and implied indemnity, equitable indemnity, contribution, and declaratory relief. The total amount of damages claimed by Turnick-Penick includes approximately $2,756,000 in repair damages and approximately $1,026,000 in delay damages. In addition, Turner-Penick faces counterclaims by Comfort Systems and potential claims by MVEI for repair and redesign costs collectively totaling $2,684,000.

In 2003, the parties attended a mediation with mediator George Calkins but did not resolve the matter. In March 2014, the parties attended another mediation with mediator Kenneth Gibbs. The parties did not reach a settlement at that time but continued settlement discussions with the Gibbs.

At the end of March 2014, Turner-Penick and MVEI reached a settlement agreement, whereby MVEI would pay Turner-Penick $750,000 in exchange for a full release of Turner-Penick's claims against MVEI, and Turnick-Penick would pay MVEI $50,000 in exchange for a full release of MVEI's claims against Turner-Penick. (ECF No. 158.)

Thereafter, at the beginning of May 2014, Turner-Penick and Collins reached a settlement agreement, whereby Turner-Penick would pay Collins $820,000 in exchange

for a release of Collins' claims against Turner-Penick, and Collins would pay Turner-Penick $100,000 in exchange for a release of Turner-Penick's claims against Collins. (ECF No. 167.) Both settlements are currently before the Court for a determination of whether they were reached in good faith.

## LEGAL STANDARD

Under California law, "[w]here a release . . . is given in good faith before . . . judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights," the release shall, among other things, "discharge the party to whom it is given from all liability for any contribution to any other parties." Cal. Code Civ. P. § 877.

To obtain a determination that it reached a settlement in good faith, "a settling party may give notice of settlement to all parties and to the court, together with an application for determination of good faith settlement." Cal. Code Civ. P. § 877.6(a)(2). Nonsettling parties are thereafter given an opportunity to contest the settlement. Id.

If, after reviewing the application for determination of good faith settlement and any response(s) thereto, the court determines the settlement was entered in good faith, "any other joint tortfeasor or co-obligor" is barred "from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Id. § 877.6(c); Tech-Bilt, Inc. v. Woodward-Clyde & Associates, 38 Cal. 3d 488, 494 (1985); Commercial Union Ins. Co. v. Ford Motor Co., 640 F.2d 210, 212 (9th Cir. 1981).

The party asserting a lack of good faith has the burden of proof on that issue. Cal. Code Civ. P. § 877.6(d).

To meet the standard of "good faith," the amount of the settlement must be "within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." Tech-Bilt, 38 Cal. 3d at 499; see also

Torres v. Union Pac. R. Co., 157 Cal. App.3d 499 (1984) (holding that "a co-defendant's settlement price cannot be grossly disproportionate to his fair share of the damages").

In applying the reasonable-range test, courts may consider the following factors: (1) "a rough approximation of the plaintiffs' total recovery and a settlor's proportionate liability"; (2) "the amount paid in settlement"; (3) "a recognition that a settlor should pay less in settlement than if found liable after a trial"; (4) "the allocation of settlement proceeds among plaintiffs"; (5) "the financial conditions and insurance policy limits of settling defendants"; and (6) evidence of "collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." Tech-Bilt, 38 Cal. 3d at 499. A settlement will be deemed to have been reached in good faith, so long as it is not so far "out of the ballpark" in relation to the foregoing factors "as to be inconsistent with the equitable objectives of the statute." Id. at 499-500.

A court must only weigh the Tech-Bilt factors when the good-faith nature of a settlement is disputed. Marine Grp., LLC v. Marine Travelift, Inc., 2013 WL 416407, at *4 (S.D. Cal. Jan. 30, 2013) (citing City of Grand Terrace v. Super. Ct., 192 Cal. App. 2d 1251, 1261 (1987)). In the absence of a dispute, a "barebones motion which sets forth the ground of good faith, accompanied by a declaration which sets forth a brief background of the case is sufficient." Id.

## DISCUSSION

Here, because the Nonsettling Parties have not objected to either of the instant joint motions for determination of good faith settlement, the Court need not apply the Tech-Bilt factors. Having reviewed the joint motions, the Court will grant the joint motions as unopposed.

## CONCLUSION & ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Turner-Penick and MVEI's Joint Motion for Determination of Good Faith Settlement, (ECF No. 158) is **GRANTED**; and

2. Turner-Penick and Collins' Joint Motion for Determination of Good Faith Settlement, (ECF No. 167), is **GRANTED**.

DATED: July 23, 2014

HON. GONZALO P. CURIEL
United States District Judge